# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# EL PASO DIVISION

| | | |
|---|---|---|
| EFREN A. SANCHEZ, | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. |
| | § | 3:17-CV-00148-RFC |
| NANCY A. BERRYHILL, | § | |
| Acting Commissioner of the | § | |
| Social Security Administration, | § | |
|     Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

This is a civil action seeking judicial review of an administrative decision pursuant to 42 U.S.C. § 405(g). Plaintiff Efren A. Sanchez ("Plaintiff") appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act. Both parties having consented to trial on the merits before a United States Magistrate Judge, the case was transferred to this Court for trial and entry of judgment pursuant to 28 U.S.C. § 636(c) and Local Court Rule CV-72. For the reasons set forth below, the Commissioner's decision will be **AFFIRMED**.

## PROCEDURAL HISTORY

Plaintiff filed applications for DIB and SSI on February 5, 2013, alleging disability beginning January 1, 2011, due to severe dry eye/retinal damage, urethritis, chronic fatigue and joint pain, and depression and anxiety. (R:12, 239-55, 276).[1] After the agency denied his applications initially and on reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which took place on September 11, 2014. (R:67-131, 155).

---

[1] Reference to the record of administrative proceedings is designated by (R:[page number(s)]). Reference to the pleadings is designated by (Doc.[docket number]:[page number(s)]).

A supplemental hearing was held on July 14, 2015. (R:37-66). The ALJ issued a decision on December 9, 2015, finding Plaintiff not disabled; at step five, the ALJ found that there were jobs in significant numbers in the national economy that Plaintiff could perform. (R:12-29). Plaintiff appealed, and the Appeals Council denied the Request for Review and Appeal on March 13, 2017. (R:1). Plaintiff timely filed his complaint in this Court on May 12, 2017. (Doc. 1, 2). Plaintiff's motion to reverse and remand, his brief, and his reply, and the Commissioner's response are before the Court. (Docs. 14, 15, 17).

## ISSUES

Plaintiff contends that the ALJ's finding that he is not disabled is not supported by substantial evidence and is not based on the application of proper legal standards. (Doc. 14-1:6-9). Specifically, Plaintiff argues that the ALJ failed to properly: (1) consider Plaintiff's severe somatic symptom disorder under Listing 12.07; (2) weigh the opinion of Plaintiff's treating urologist, Dr. Spier, M.D.; and (3) account for and expand upon the Psychiatric Review Technique Evaluation findings in formulating Plaintiff's Residual Functional Capacity ("RFC"). (Docs. 14-1:6-9; 15:2). Plaintiff asks this Court to reverse and render a fully favorable decision or reverse and remand for further proceedings. (Doc. 14-1:10).

## DISCUSSION

### I. *Standard of Review*

This Court's review is limited to a determination of whether the Commissioner's decision is supported by substantial evidence, and whether the Commissioner applied the proper legal standards in evaluating the evidence. *See* 42 U.S.C. § 405(g); *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995) (*per curiam*). "Substantial evidence is such relevant evidence as a reasonable mind might accept to support a

conclusion. It is more than a mere scintilla, and less than a preponderance." *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000), citing *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995) (internal quotations omitted). In applying the substantial evidence standard, the court may not "re-weigh the evidence, try the questions *de novo*, or substitute [its own] judgment for the Commissioner's, even if [it] believe[s] the evidence weighs against the Commissioner's decision." *Masterson*, 309 F.3d at 272. "Conflicts in the evidence are for the Commissioner and not the courts to resolve." *Newton*, 209 F.3d at 452 (citations and internal alterations omitted).

## II.    *Evaluation Process*

The ALJ evaluates disability claims according to a sequential five-step process: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe medically determinable physical or mental impairment; (3) whether the claimant's impairment(s) meets or equals the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) whether the impairment prevents the claimant from performing past relevant work; and (5) whether the impairment prevents the claimant from doing any other work. 20 C.F.R. § 404.1520. It is the ALJ's responsibility to determine the claimant's RFC, which is the most an individual can still do despite his limitations, used in addressing steps four and five. 20 C.F.R. § 404.1545; Social Security Ruling ("SSR") 96-8p, 1996 WL 374184.

It is Plaintiff's burden to establish disability, i.e., a physical or mental impairment lasting at least 12 months that prevents him from engaging in substantial gainful activity, and to provide or identify medical and other evidence of his impairments. *See* 42 U.S.C. § 423(d)(5); 20 C.F.R. § 404.1512(a). Once the claimant bears the burden of proof at the first four steps in the analysis, the burden shifts to the Commissioner to show that there is other substantial gainful employment available that the claimant is capable of performing. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir.

1995); *Anderson v. Sullivan*, 887 F.2d 630, 632 (5th Cir. 1989). If the Commissioner adequately points to potential alternative employment, the burden then shifts back to the claimant to prove that he is unable to perform the alternative work. *Anderson*, 887 F.2d at 632-33.

## III. *Listing 12.07*

Plaintiff claims that the ALJ failed to properly address Plaintiff's somatic symptom disorder in his decision. (Doc. 14-1:9-10). Plaintiff contends that his history of chronic urethritis, for which he has sought medical attention from multiple physicians who have not been able to determine the source of his symptoms, meets the criteria under paragraph A of Listing 12.07 for somatic symptom disorders. (*Id*.). In his Reply, Plaintiff also maintains that he met the criteria under Listing 12.07's paragraph B. (Doc. 17:2-3).

At step three, the ALJ explicitly considered Plaintiff's somatic symptom disorder, which the ALJ had listed amongst Plaintiff's severe impairments at step two. (R:16-17). To meet Listing 12.07, a claimant must satisfy both the paragraph A and paragraph B criteria. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 12.07 (effective Aug. 12, 2015 to May 23, 2016). The ALJ explicitly considered only the paragraph B criteria and found that Plaintiff did not satisfy the requirements of that paragraph. (R:16-17). To satisfy paragraph B, Plaintiff must have marked limitations from two among the four areas of mental functioning listed therein. Listing 12.07(B). The ALJ determined that Plaintiff did not have marked limitations in any of the four areas. (R:16-17).

Plaintiff argues that he has marked restrictions in of activities of daily living, where the ALJ found only mild restrictions, and marked difficulties in maintaining concentration, persistence, and pace, where the ALJ found only moderate difficulties. (Doc. 17:2-3; R:17). Plaintiff cites to evidence explicitly considered by the ALJ in considering and weighing all of the

4

evidence. (Doc. 17:2-3; R:16-17, 23). Unfortunately for Plaintiff, the question is not whether there is substantial evidence to support a favorable determination of disability, but whether there is substantial evidence to support the Commissioner's determination.

The ALJ found that Plaintiff is independent in dressing, bathing, feeding, sweeping, mopping, doing laundry, washing dishes, shopping, cooking, and driving. (R:17, 658). The ALJ also noted that the allegations of limitation in Plaintiff's ability to perform his daily activities is primarily due to his physical symptoms, not his mental health; except that he stopped brushing his teeth because he is too depressed to care. (*Id.*). Additionally, the ALJ found that Plaintiff had moderate limitations in the area of concentration, persistence, and pace, noting that Plaintiff had demonstrated adequate remote recall, sequencing and mental control, and concentration. (*Id.*)

The Court finds that there is substantial evidence in the record to support the ALJ's determination that Plaintiff had only mild and moderate limitations and therefore did not satisfy the requisite criteria of Listing 12.07. As such, Plaintiff is not entitled to relief on this claim.

### IV.     *Weighing Dr. Spier's Medical Opinion*

The ALJ considered the medical source statement from Plaintiff's treating urologist, Dr. Jeffrey Spier, M.D, and he gave it little weight. (R:23-24). The ALJ considered and gave partial weight to the opinion of the consultative examiner. (R:22). Plaintiff claims that the ALJ erred by failing to give Dr. Spier's opinion controlling or proper weight. (Doc. 14-1:8-9).

In considering medical opinion evidence, the ALJ should generally give greater weight to a treating physician's opinion. 20 C.F.R. § 404.1527(c)(2) (effective Aug. 24, 2012 to March 26, 2017). To give the treating source's opinion controlling weight, the ALJ must find that the opinion on the issues of the nature and severity of the impairment is (1) well-supported by medically acceptable clinical and laboratory diagnostic techniques, and (2) not inconsistent with

the other substantial evidence in the record. *Id*. However, if the ALJ finds the treating sources' opinions are not deserving of controlling weight, the relative weight of the sources' opinions are assessed through the application of several factors: (1) length and frequency of treatment, (2) nature and extent of treating relationship; (3) degree to which opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether the physician is a specialist in the relevant area; and (6) other factors. 20 C.F.R. § 404.1527(c).

The ALJ considered the requisite factors in weighing Dr. Spier's medical source opinion. The ALJ acknowledged that Dr. Spier, a urologist, had been treating Plaintiff for four years, detailing numerous visits and the treatment provided, but found Dr. Spier's opinions internally inconsistent and unsupported by his treatment notes. (R:23-24). First, the ALJ found that the physical limitations Dr. Spier opined conflict with his statement that Plaintiff has no physical limitations. (R:24, 806-812). The question to which Dr. Spier responded that Plaintiff had "no physical limitations" was asking him to "describe any *other* limitations (such as limitations using hands, arms, fingers, psychological limitations, limited vision, difficulty hearing,…) … ." (R:811) (emphasis added). Thus, such response did not, as the ALJ found, conflict with Dr. Spier's previous limitations.

The ALJ, however, also found no credible support in Dr. Spier's treatment records or in the record as a whole for the limitations opined by Dr. Spier regarding the length of time Plaintiff could sit (1 hour at a time), stand (one hour at a time), or sit/stand/walk (2 hours total in an 8-hour day), for limitations regarding Plaintiff's ability to lift and carry, or for Plaintiff's needing ready access to the bathroom for ten minutes every hour. (R:23-24). The ALJ found that Dr. Spier's opinion was contradicted by the findings of consultative examiner Emilio Gonzalez-Ayala, M.D., that Plaintiff could sit (up to 8 hours), stand (up to four hours), walk (up to three hours), and move

6

without difficulty and lift and carry without problems. (R: 22, 654). The ALJ noted that Dr. Spier did conclude that Plaintiff is limited only by his urinary symptoms. (R:24).

As to his frequent need for access to the restroom, most of Dr. Spier's earlier records consistently reflect that Plaintiff reported needing to urinate once every 2-4 hours, and needing to urinate more frequently than every two hours less than twenty-percent of the time. (R:481, 485, 490, 494, 498, 503). However, at least four later records also reflect that Plaintiff reported needing to urinate 16 times during the day and 3-4 times at night, or about once every hour during the day. (R:509, 514, 525, 815-17). The most recent record, from May 19, 2015, indicating that Plaintiff needed to urinate 16 times during the day, was corrected on July 9, 2015, to indicate that Plaintiff needed to urinate more than once every two hours. (R:814-17). The consultative examiner did not opine with what frequency Plaintiff would need to access the restroom or for what duration, but did note that Plaintiff alleged a need to urinate between 25-30 times a day. (R:650). Despite feeling the need to urinate with such frequency, however, Dr. Spier's records also reflect that Plaintiff "never finds it difficult to postpone urination." (R:494). Nor is there any indication in the record that Plaintiff experienced incontinence. The Court notes that Plaintiff did request a restroom break during his hearing with the ALJ and the ALJ was in a position to observe the length of break taken and Plaintiff's demeanor both before and after the break.

The ALJ also found that Dr. Spier's opinion that Plaintiff experienced no positive response to medications was not supported by Dr. Spier's treatment notes showing improvement with medications. (R:24, 498, 808). Records reflected that Plaintiff had experienced relief in his urinary symptoms with medication, but that he chose to discontinue taking the medication due to a side effect of dry eyes. (R: 498). He took another medication for two months and reported feeling improvement, and later started a different medication with little improvement noted after

7

just one week. (R:525). The ALJ also noted several instances of noncompliance with, or rejection of, prescribed treatment. (R:24). A medical condition that can reasonably be remedied by medical treatment is not disabling within the meaning of the Social Security Act. *Lovelace v. Bowen*, 813 F.2d 55 (5th Cir. 1987).

Plaintiff quotes HALLEX II-4-1-2, arguing that an ALJ may not substitute his lay opinion for that of a treating physician:

> All things being equal, when a treating source has seen a claimant long enough to have obtained a detailed longitudinal picture of the claimant's impairment(s), we will always give greater weight to the treating source opinion than to the opinions of non-treating sources even if the other opinions are also reasonable or even if the treating source's opinion is inconsistent with other substantial evidence of record.

(Doc. 14-1:8-9, quoting HALLEX II-4-1-2 (2008), 1996 WL 1586732 at *11).

In this case, the ALJ assigned little weight to Dr. Spier's opinion, only partial weight to the consultative examiner's opinion, and little weight to the state agency physicians' opinion. (R:22, 24). There is no reason for the Court to conclude that the ALJ failed to give Dr. Spier's opinion more weight than if it were from a non-treating source. *See* HALLEX II-4-1-2, 1996 WL 1586732 at *11. Nor were "all things [were] equal" between the opinions of Dr. Spier and the consultative examiner where Dr. Spier's opinion was unsupported by his own treatment records.

Plaintiff has not established that the ALJ's determination to give Dr. Spier's opinion little weight was the result of legal error, and the determination is supported by substantial evidence. Plaintiff is not entitled to relief on this claim.

V.     *Mental RFC*

Plaintiff claims that the RFC, limiting Plaintiff to "unskilled work with no interaction with the public, only occasional interaction with coworkers, and occasional supervision" is deficient as a matter of law because it is not a function-by-function assessment of work-related capacities

8

affected by his moderate limitation in concentration, persistence, or pace, which the ALJ recognized at step three. (Doc. 14-1:7; R:17-18).

Although the definition in the regulations for unskilled work does not detail the basic mental demands for such work, such demands are detailed in various social security rulings. *See* 20 C.F.R. § 404.1568(a). SSR 85-15 states that "[t]he basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." SSR 85-15, 1985 WL 56857 at *4; *see also* SSR 96-8p, 1996 WL 374184 (similar), SSR 96-9p, 1996 WL 374185, at *9 (similar). Unskilled work is consistent with the ability to follow one to three step instructions, classified at level of SVP 1 and 2. *Sasich v. Colvin*, No. 15-461-JWD-RLB, 2016 WL 7826808 at *5 n.2 (M.D. La. Nov. 14, 2016). This Court has previously found that an RFC for "simple, routine, and repetitive tasks" fairly incorporated a moderate limitation in concentration, persistence, or pace. *See Muniz v. Colvin*, No. EP:13-CV-161-RFC, 2015 WL 5062303 (W.D. Tex. Oct. 22, 2015); s*ee also Cornejo v. Colvin*, No. EP:11-CV-470-RFC, 2013 WL 2539710 (W.D. Tex. June 7, 2013) (ALJ's RFC finding that a claimant can perform simple, routine, one to two step unskilled work instructions may reasonably incorporate moderate limitations in maintaining concentration, persistence, or pace), finding persuasive *Bordelon v. Astrue*, 281 Fed. Appx. 418, 422-423 (5th Cir. 2008) (*per curiam*) (unpublished) (rejecting other circuit's reasoning regarding what is required to reasonably incorporate a finding of moderate difficulties in maintaining concentration, persistence, and pace, into an RFC).

The ALJ discussed the evidence of Plaintiff's mental impairments. The ALJ noted that his mental status examination was essentially normal, including logical thoughts, good

concentration, and intact memory. (R:24-25). Plaintiff had earned his GED and bachelor's degree in psychology after the alleged onset date. (*Id.*). Plaintiff's cognitive examination results were within normal limits, including adequate remote recall, mental calculation, verbal recitation, and concentration. (*Id.*). Further, Dr. Peter Fernandez, Ph.D., a psychological consultative examiner, provided a statement of Plaintiff's ability to do work-related mental activities, indicating that Plaintiff had no limitation in understanding and remembering, carrying out simple instructions, and exercising judgment to make simple work-related decisions. (R:25, 661-62). Dr. Fernandez also opined that Plaintiff was moderately to markedly restricted in appropriately interacting with the public, supervisors, co-workers, and changes in a routine work setting. (*Id.*). Thus, the ALJ's determination that Plaintiff was able to perform unskilled work involving no interaction with the public, only occasional interaction with coworkers, and occasional supervision adequately addresses the ALJ's finding at step three that Plaintiff had a moderate limitation in concentration, persistence, and pace, and is substantially supported by the ALJ's detailed discussion and the evidence in the record.

Moreover, the ALJ also noted that Plaintiff had reported improvement in his mental health symptoms with both therapy and medication in 2013, but then failed to attend a support group to which he was referred and refused to take medication to assist with his anxiety. (R:24). Even with gaps in his seeking or obtaining mental health services, mental status examinations when he did seek such services in 2014 and again in 2015 were essentially normal and within normal limits. (R:24-25). Infrequent treatment, failure to seek regular care, and evidence that condition can be controlled with treatment, all weigh against finding a condition disabling. *See Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990) (failure to seek treatment is an indication of nondisability).

To the extent, if any, the ALJ erred by stating Plaintiff's RFC in terms of a limited range of unskilled work rather than stating that Plaintiff had the ability to understand, remember, and carry out simple instructions and make simple work-related decisions requiring exercising judgment, limited to the amount of interaction required regarding various types of people, the Court finds such error to be harmless.   Plaintiff is not entitled to relief on this claim.

## **CONCLUSION**

Based on the foregoing, the Court hereby **ORDERS** that the decision of the Commissioner be **AFFIRMED** consistent with this opinion.

**SIGNED and ENTERED on October 26, 2017.**

_____

**ROBERT F. CASTANEDA**
**UNITED STATES MAGISTRATE JUDGE**